UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

EARL WAYNE STEELE,

                Petitioner,

      v.

JASON ELLIS, Warden,

                Respondent.

Case No. 1:13-cv-00079-REB

**MEMORANDUM DECISION AND ORDER**

Pending before the Court is Petitioner Earl Wayne Steele's Petition for Writ of Habeas Corpus (Dkt. 1). Respondent has filed an Answer and Brief in Support of Dismissal (Dkt. 12), and Petitioner has filed a Traverse, or reply (Dkt. 15). The Court takes judicial notice of the records from Petitioner's state court proceedings, lodged by Respondent on September 16, 2013. (*See* Dkt. 11.)

The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c). (Dkt. 9.) Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that oral argument is unnecessary. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying the Petition and dismissing this case with prejudice.

**MEMORANDUM DECISION AND ORDER - 1**

The facts underlying Petitioner's conviction are set forth clearly and accurately in *Steele v. Idaho*, 291 P.3d 466, 468 (Idaho Ct. App. 2012), which is contained in the record at State's Lodging D-4. The facts will not be repeated here except as necessary to explain the Court's decision.

Petitioner was charged with three counts of lewd conduct with a minor under 16 years of age against his daughter, as well as one count of sexual abuse of a minor under 16 years of age against his daughter's friend, in the Fourth Judicial District in Ada County, Idaho. The time period of these charges spanned from 2004 to 2007. (State's Lodging A-1 at 17-18.) Pursuant to a plea agreement, the prosecution downgraded the lewd conduct charge with respect to Petitioner's daughter to a charge of sexual abuse of a minor under 16.[1] The prosecution also agreed to drop all remaining charges and to refrain from filing additional charges involving other alleged child victims (Petitioner's two minor sons).

Petitioner entered an *Alford* plea[2] to one count of sexual abuse of a minor against

---

[1] Lewd conduct is a more serious charge than sexual abuse. The maximum penalty for a lewd conduct involving a minor conviction is life imprisonment. Idaho Code § 18-1508. The maximum penalty for sexual abuse of a minor is currently 25 years in prison. Idaho Code § 18-1506.

[2] An *Alford* plea is the equivalent of a guilty plea, the only difference being that the defendant is not required to expressly admit guilt. *See North Carolina v. Alford*, 400 U.S. 25, 35 (1970) (holding that it is constitutionally permissible for a court to accept and sentence an individual upon "a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he

**MEMORANDUM DECISION AND ORDER - 2**

his daughter, limited to the 2004 to 2005 time frame—the amended indictment deleted any reference to conduct committed in 2007. The timing of the charged conduct was critical because the sexual abuse statute, Idaho Code § 18-1506, was amended in 2006 to increase the maximum penalty from 15 to 25 years in prison. (State's Lodging B-4 at 2.) Thus, Petitioner's plea to conduct committed during 2004 or 2005 eliminated the possibility of his serving more than 15 years in prison. As part of the plea agreement, Petitioner agreed to participate in a psychosexual evaluation for sentencing purposes.

During the change of plea hearing, the prosecutor made the following proffer as a factual basis for Petitioner's plea:

> Judge, had we gone to trial the state would have presented the following evidence to prove sexual abuse of a minor [under] the age of 16 beyond a reasonable doubt.
>
> We would have first presented the testimony of [Petitioner's daughter], who would have identified the defendant as being her dad, bio dad. And she would have testified that on or about September 2007, she ran away from home and was gone approximately four days. Once police found her and talked with her, she disclosed ongoing sexual abuse and lewd and lascivious conduct acts that had been going on for the past three years.
>
> That time line of when those acts, which she would have described at the trial, was concurrent with when her mother stopped being able to be sexually intimate with Dad due to a car accident, so mom got in a car accident and [was] severely disabled about the time defendant started having sexual contact in 2004/2005, and mom was in a wheelchair.

were guilty.").

**MEMORANDUM DECISION AND ORDER - 3**

Mom would have testified at the trial that she was in this car accident, unable to perform sexually, and she does remember a time when she rolled into the bedroom and caught the defendant, who had been drinking heavily, naked in bed with their daughter and that he jumped up.

She would have also testified that she's pled guilty for failure to report that to authorities. She's already been processed on that charge[] and sentenced.

In addition, [Petitioner's daughter] would have testified that the touching that occurred for those three and a half years was progressing in severity from touching, having the defendant have her touch him when he had been drinking on his penis, until he "spermed." That was her words [sic]. That he would put his hands down her pants. There was a curtain over the bathroom door because Mom's wheelchair needed to go in and out, and that a lot of times she would be bathing or grooming and she would catch him looking at her.

In addition, you'll note that one of the charges I'm dismissing is Count 4, and that is [the daughter's] little friend, [M.] who the defendant actually solicited while [M.] was over.

[M.] would have testified at trial, as she did in the grand jury, and I think that this would have been coming in 404(b) towards [the daughter's] case that when she spent the night over there, the defendant had [his daughter] contact [M.] and say "Do you want to do these things with me," and solicited her, touched her as well, just on the thigh, but offered to give them driving lessons and alcohol if they would go ahead and do this.

[Petitioner's daughter] would have testified that in addition, she ran away from home because when Mom and brothers were inside Wal-Mart shopping, she was in the car with her dad, and her dad solicited her and said, "I want to go all the way," and that's basically what prompted her to take off and run away from home. . . .

**MEMORANDUM DECISION AND ORDER - 4**

[Petitioner's two sons] were seen at CARES, as well, and described a lot of physical abuse when the defendant was under the influence of alcohol, much of what he does not remember, according to his attorney, and that's why we are offering this *Alford* [plea] to the court.

Lastly, we would have proven flight evidence that once this came to the attention of law-enforcement, the defendant took off. And so from my perspective, we would have had no problem proving this sexual-abuse count alleged in Count 1, and I believe there is a factual basis.

(State's Lodging A-2 at 12-15.) Petitioner agreed that the judge should "accept the state's recitation of the facts as they would have been presented at trial." (*Id.* at 15.)

After entry of the *Alford* plea, Petitioner participated in a psychosexual evaluation as required by the plea agreement. During that evaluation, Petitioner evidently maintained that he did not remember having committed the crime, blaming his behavior on alcoholic blackouts; Petitioner might even have affirmatively asserted his innocence.[3] Based at least in part on Petitioner's failure to accept responsibility for the harm he caused his daughter, the evaluator determined that Petitioner was at a high risk to re-offend and was not a good candidate for treatment. (State's Lodging A-3 at 28-33.)

At sentencing, Petitioner appeared to accept some responsibility: "I know I need sex offender treatment to help me answer my own questions." (*Id.* at 28.) However, Petitioner also stated he was not "100 percent sure" that he committed the crime and implied that he may have staggered into his daughter's bed by mistake when he was

---

[3] The psychosexual evaluation is not in the record lodged by Respondent.

**MEMORANDUM DECISION AND ORDER - 5**

drunk. (*Id*. at 28-29.) Petitioner also minimized his conduct by stating, "*If I had touched* [my daughter] inappropriately, *I didn't mean to or realize* that I had." (*Id*. at 28 (emphasis added).)

The sentencing judge disbelieved Petitioner's assertion that he did not remember committing the crime, noting that the sexual molestation occurred "off and on for a period of two years." (*Id*. at 30.) The judge cited the results of the psychosexual evaluation and stated she was quite concerned that Petitioner continued to blame his actions on alcoholic blackouts and failed to accept responsibility for the harm he had caused:

> The most problematic of all of this is the fact that you simply are not accepting responsibility for your conduct. And in the SANE evaluation you didn't see how it harmed your daughter and the other victim in this case.
>
> And your failure to accept responsibility and just to come in and say, yeah, I know what I did, it was wrong continues and in my opinion continues to victimize your daughter by that kind of attitude as well as the other victim in this case.
>
> . . . .
>
> I think this is all—your conduct is very serious and you're at a high risk to reoffend. I think that you will continue to commit sexual acts if the opportunity presents itself against minor children.

(*Id*. at 31-32.)

The sentencing judge, apparently under the mistaken belief that the amended sexual abuse statute applied to Petitioner's case, sentenced Petitioner to 25 years in prison

**MEMORANDUM DECISION AND ORDER - 6**

with 7 years fixed.[4] (*Id*. at 32.) The Idaho Court of Appeals affirmed the sentence, and the Idaho Supreme Court denied review. (State's Lodging B-4, B-7.) However, because Petitioner was convicted under the previous version of Idaho Code § 18-1506, the trial court later reduced Petitioner's sentence to 15 years—the appropriate statutory maximum—with 7 years fixed. (State's Lodging D-4 at 2.)

In Petitioner's state postconviction petition, he argued that his *Alford* plea was not voluntary and intelligent and that he was denied effective assistance of counsel with respect to counsel's alleged failure to advise him of the consequences of his plea. Petitioner stated that he believed an *Alford* plea allowed him to maintain his innocence throughout the criminal process—including throughout the psychosexual evaluation—without it negatively affecting him in any way. (State's Lodging C-1 at 1-7.) Because the judge sentenced Petitioner to the statutory maximum in part because of Petitioner's failure to accept responsibility for his crime, Petitioner claimed that his counsel should have informed him of the potential consequences of denying guilt during a psychosexual evaluation.

The state district court held an evidentiary hearing, at which both Petitioner and Petitioner's trial counsel testified. (State's Lodging C-3 at 41-162.) Petitioner testified that the only reason he entered the *Alford* plea was because he did not want to admit guilt

---

[4] The Court notes that not only did the sentencing judge misapprehend the statutory maximum applicable to Plaintiff's conviction, but the prosecutor affirmatively argued for the 25-year maximum and Petitioner did not object. Likely this was simply an oversight on behalf of all parties.

**MEMORANDUM DECISION AND ORDER - 7**

and because counsel assured Petitioner he would receive a rider (retained jurisdiction) and probation rather than a prison sentence. (*Id*. at 50-51.) Trial counsel testified that he never promised Petitioner anything of the sort, but told Petitioner that he would argue for a rider and probation at sentencing—which he did. (*Id*. at 141-42.)

Counsel testified that, in general, Idaho courts do not look favorably on *Alford* pleas, but that in cases such as Petitioner's, where the defendant claims no recollection of the crime, such pleas can be accepted. (*Id*. at 128-29.) Counsel believed that an *Alford* plea was appropriate because claiming a lack of memory of the crime is not a defense and that Petitioner would be unable to testify at trial that he did not commit the crime. (*Id*. at 129-30.) Petitioner's counsel also stated that he told Petitioner he believed the state's offer was "as good as the *Alford* was likely to get." (*Id*. at 142.)

The state district court held that Petitioner's plea was voluntary and intelligent and that trial counsel was not ineffective. (*Id*. at 177-80.) The Idaho Court of Appeals affirmed. The court cited Idaho case law holding that to enter a valid guilty plea, a defendant "must only be informed of the direct consequences of a plea as opposed to the collateral or indirect consequences," and that "the Sixth Amendment does not contain an implied duty for an attorney to inform his client of the collateral consequences of a guilty plea." (State's Lodging D-4 at 4.) The Court went on to conclude that the negative psychosexual evaluation, the imposition of the maximum sentence, and any parole consequences were collateral, rather than direct, consequences of Petitioner's *Alford* plea.

(*Id*. at 6-10.)

The state court of appeals acknowledged *Padilla v. Kentucky*, 559 U.S. 356 (2010), in which the United States Supreme Court held that a criminal defense attorney renders deficient performance under the Sixth Amendment if he or she fails to advise a client of the potential immigration consequences of a guilty plea. In *Padilla*, the Court stated that it had "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland* [*v. Washington*, 466 U.S. 668, 689 (1984)]." *Padilla*, 559 U.S. at 365. However, because *Padilla* expressly reserved the question of whether such a distinction exists, the Idaho Court of Appeals concluded in Petitioner's case that "the holding of numerous [Idaho] cases that an attorney is not required to inform a client of collateral consequences of a plea was not abrogated by *Padilla* except in the deportation context." (States' Lodging D-4 at 5.)

The Idaho Court of Appeals did recognize the potential tension between an *Alford* plea—which allows a defendant to plead guilty without expressly admitting guilt—and the fact that individuals who do not accept responsibility for their crimes (particularly sex crimes) may be found to be unamenable to treatment or to exhibit a lack of remorse. (*Id*. at 11 n.9.) Though the court stated that "the best practice may be to avoid the entry of *Alford* pleas in sex offense cases," the court was satisfied that Petitioner's constitutional rights were not violated. *Id.* The Idaho Supreme Court denied Petitioner's petition for

review. (State's Lodging D-7.)

Petitioner filed the instant federal Petition in February 2013. He asserts that he is entitled to habeas corpus relief because his guilty plea was not voluntary and intelligent as a result of ineffective assistance of counsel. Petitioner claims that he believed, based on trial counsel's advice, that if he entered an *Alford* plea, he could continue to maintain his innocence and not have that position harm him at sentencing or at later parole hearings. Petitioner alleges that had he known that his failure to acknowledge guilt could result in a negative psychosexual evaluation and the sentencing judge's imposition of a 7 to 15 year sentence, he would not have entered the plea and would have insisted on going to trial.

## DISCUSSION

### 1.  Standard of Law

Federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas relief is further limited to instances where the state court's adjudication of the merits of the petitioner's claim

Under § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas relief is further limited to instances where the state court's adjudication of the petitioner's claim

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A federal habeas court reviews the state court's "last reasoned decision" in determining whether a petitioner is entitled to relief. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

Petitioner does not challenge any specific factual findings of the state courts. Instead, he contests the state court's legal conclusions, including application of the law to the facts. In that setting, § 2254(d)(1) governs, and it provides two tests to be considered in the alternative: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Under the alternative "unreasonable application" test, the petitioner must show that the state court, even after identifying "the correct governing legal rule" from Supreme Court precedent, nonetheless "unreasonably applie[d] it to the facts of the particular state

prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

Importantly, a federal court cannot grant habeas relief simply because it would have reached a different conclusion, had it considered the matter independently. Rather, to warrant relief, the state court's application of federal law must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. This test of § 2254(d) is an onerous standard, satisfied only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

In *Richter*, the United States Supreme Court explained that, under § 2254(d), a habeas court (1) "must determine what arguments or theories supported or . . . could have supported, the state court's decision;" and (2) "then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id*. at 786. If fairminded jurists could disagree on the correctness of the state court's decision, then a federal court cannot grant relief under § 2254(d)(1). *Id*. The Supreme Court emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (internal

citation omitted).

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for an assessment of whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

If the state appellate court did not decide a properly-asserted claim on the merits—or if the state court's factual findings are unreasonable under § 2254(d)(2)—then § 2254(d)(1) does not apply, and the federal district court reviews the claim de novo. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). In such a case, as in the pre-AEDPA era, a district court can draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989). *Cf.* 28 U.S.C. § 2254(d)(1) (limiting review to "clearly established Federal law, as determined by the Supreme Court"). Still, however, even under de novo review where the factual findings of the state court are not unreasonable, the Court must apply the presumption of correctness found in § 2254(e)(1). *Pirtle*, 313 F.3d at 1167.

Plaintiff asserts that his guilty plea was not voluntary and intelligent because it was based on inadequate advice from his attorney. This claim implicates both the Fourteenth

Amendment's Due Process Clause and the Sixth Amendment right to effective assistance of counsel. To comply with due process, a guilty plea must be voluntary and intelligent. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Where a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). A defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

In addition, the habeas petitioner challenging the guilty plea entered on the advice of counsel must show a reasonable probability that *had* the petitioner received adequate advice from his attorney, he would not have pleaded guilty but rather would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Strickland v. Washington*, 466 U.S. 668, 694 (1984) (holding that, to satisfy the prejudice standard for a Sixth Amendment ineffective assistance of counsel claim, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

Petitioner also appears to claim that he would not have pleaded guilty if he had known his continued assertion of his privilege against self-incrimination would be used

against him. (Dkt. 1 at 4.) Therefore, his assertions may also implicate the Fifth

Amendment. Although it is clear under the Fifth Amendment that no adverse inferences

may be taken from a defendant's silence during the *guilt* phase of a trial, *Carter v.*

*Kentucky*, 450 U.S. 288, 302-03 (1981), the Supreme Court has left open the possibility

that some such inferences might be permissible at *sentencing* (for example, as indicating a

defendant's lack of remorse) so long as the adverse inference does not relate to the facts

and circumstances of the crime. *Mitchell v. United States*, 526 U.S. 314, 330 (1999);

*White*, 134 S. Ct. at 1704-05 (explaining that *Mitchell* expressly reserved the question of

whether assertion of the privilege against self-incrimination at sentencing may be the

basis for a finding of lack of remorse).

2. **The Decision of the Idaho Court of Appeals—that Petitioner's Attorney Did Not Render Ineffective Assistance and that Petitioner's Plea Was Voluntary and Intelligent—Was Not Contrary to, nor Based on an Unreasonable Application of, Clearly-Established Supreme Court Precedent.**

A review of the relevant case law reveals that the Idaho Court of Appeals'

rejection of Petitioner's claim of ineffective assistance of counsel leading to his *Alford*

plea was neither contrary to, nor an unreasonable application of, the clearly-established

holdings of the United States Supreme Court.

This Court has found no Supreme Court case law—and Petitioner has cited

none—holding that an *Alford* plea is invalid if the defendant is not advised that continued

assertion of innocence might have a negative effect on a psychosexual evaluation, might

lead a judge to impose a harsher sentence based on a failure to accept responsibility for

the crime, or might cause a parole board to deny parole in the future. Thus, it is not clearly-established that the Idaho Court of Appeals erred when it determined that Petitioner's plea was voluntary and intelligent notwithstanding his alleged ignorance that denial of wrongdoing could affect his evaluation, the sentence imposed, or the sentence he would ultimately serve.

Additionally, the state court of appeals addressed Petitioner's claim under the direct-versus-indirect consequences analysis generally employed by Idaho courts. (State's Lodging D-4.) As *Padilla* noted, the Supreme Court has never ruled upon the issue of whether such a direct-versus-indirect consequences analysis is permitted or prohibited under the Sixth Amendment. 559 U.S. at 365. Indeed, the Court in *Padilla* expressly declined to decide that question. *Id.* Thus, there is also no precedent from the nation's highest court holding that a potential increase in sentence based on a psychosexual evaluator's finding of a lack of acceptance of responsibility is a direct consequence of which a defense attorney must advise his client, as opposed to a collateral consequence. Therefore, the Idaho Court of Appeals' decision is not objectively unreasonable under 28 U.S.C. § 2254(d)(1).

Finally, as described in *White v. Woodall*, there is no clearly-established Supreme Court precedent prohibiting a sentencing court from drawing an inference of a lack of remorse or a failure to accept responsibility based on a defendant's silence or refusal to incriminate himself. 134 S. Ct. at 1704-05 ("We need not decide here, and express no

view on, whether the conclusion that a no-adverse-inference instruction was required [at sentencing] would be correct in a case not reviewed through the lens of § 2254(d)(1). For we are satisfied that the issue was, at a minimum, not 'beyond any possibility for fairminded disagreement.'" (quoting *Richter*, 131 S. Ct. at 787)). Because such an inference has nothing to do with the "factual determinations respecting the circumstances and details of the crime," *Mitchell*, 526 U.S. at 330, it was reasonable for the state court of appeals to conclude that Petitioner's rights were not violated when he entered an *Alford* plea of guilty without knowing that continued allegations of memory loss regarding his conduct or assertions of innocence might influence the judge to impose a harsher sentence or lead a parole board to deny parole. *Id.* ("The Government retains the burden of proving facts relevant to the crime at the sentencing phase and cannot enlist the defendant in this process at the expense of the self-incrimination privilege. Whether silence bears upon the determination of a lack of remorse . . . is a separate question. It is not before us, and we express no view on it.").

For the foregoing reasons, Petitioner is not entitled to habeas relief under 28 U.S.C. § 2254(d)(1).

**3.    Alternatively, on *De Novo* Review, Petitioner Has Not Shown Prejudice From His Allegation that his Counsel Did Not Inform Him of the Potential Consequences of Failing to Accept Responsibility During the Psychosexual Evaluation, at Sentencing, or at Future Parole Hearings.**

The Idaho Court of Appeals held that Petitioner's counsel was not required to inform him that an *Alford* plea could result in a negative psychosexual evaluation, a

higher sentence based on that negative evaluation and Petitioner's failure to accept responsibility, or a negative parole recommendation. Having made that holding, that court did not reach the question whether counsel's failure to advise him of these possibilities prejudiced Petitioner. The Court has reviewed that issue de novo as an alternative to the § 2254(d)(1) analysis set forth above. *See Pirtle*, 313 F.3d at 1167.

For purposes of de novo review, the Court will assume (1) that Petitioner's *Alford* plea directly resulted in his failure to acknowledge responsibility during the psychosexual evaluation, (2) that this failure to acknowledge responsibility directly resulted in the evaluator's opinion that Petitioner was at a high risk to re-offend and was not amenable to treatment, and (3) that the evaluator's opinion directly resulted in the sentencing judge's imposition of the maximum sentence. However, the Court concludes that, even if there exists a causal relationship directly linking Petitioner's *Alford* plea, his denials of guilt during the evaluation, and his ultimate sentence, Petitioner still fails to show a reasonable probability that had he known his sentence could have been affected by his failure to admit guilt, he would not have pled guilty but instead would have insisted on going to trial. *See Hill*, 474 U.S. 59.

Of particular significance to such a conclusion is the exceptionally favorable plea agreement that Petitioner and his counsel had made with the State. Petitioner was initially charged with three counts of lewd conduct with a minor under 16 years of age (alleged to have been committed against his daughter), as well as one count of sexual abuse of a

minor under 16 years of age (alleged to have been committed against his daughter's friend). (State's Lodging A-1 at 17-18.) Just as to the lewd conduct charges alleged to have been committed against his daughter, Petitioner was facing three separate counts that *each* carried a maximum sentence of life imprisonment. Idaho Code § 18-1508. The sexual abuse against a second minor victim (committed in 2007 according to the original indictment) carried a 25 year maximum sentence under the 2006 amendment to Idaho Code § 18-1506. (*See* State's Lodging A-1 at 18.) Thus, by pleading guilty to sexual abuse of a minor involving stipulated facts that triggered the pre-2006 version of the statute, rather than the harsher penalties imposed by the 2006 amendment, Petitioner avoided being exposed to an *additional* 10 years in prison. Further, the state was considering whether to file other charges against Petitioner related to the alleged physical abuse of his minor sons. By entering the *Alford* plea, Petitioner avoided these charges entirely.

In contrast to the favorable plea deal, Petitioner would have found himself in an extremely *un*favorable position had he gone to trial. As Petitioner's trial attorney testified during state postconviction proceedings, Petitioner had no defense to the lewd conduct or sexual abuse charges; because of his alleged lack of memory, he could not even deny the allegations.  Further, at the change of plea hearing, Petitioner agreed his daughter would have testified that Petitioner committed ongoing sexual abuse over at least two years, that she ran away from home because Petitioner asked her to "go all the way," and that the

abuse started when her mother became unable to engage in sexual behavior. Petitioner agreed that his daughter's friend would have testified that Petitioner propositioned her through his daughter, touched her inappropriately on the thigh, and offered her driving lessons and alcohol in return for sexual contact. Petitioner also agreed that his wife would have testified that she caught him naked in bed with his daughter and that he jumped up when she saw them.

These conceded acknowledgments of particularly damning testimony is not consistent with that of a man so drunk he could not remember whether he engaged in sexually predatory behavior over a period of some years with his daughter, and engaging in attempts at similar behavior with his daughter's friend. Petitioner offers no legitimate reason why any juror would have disbelieved all three witnesses based only on Petitioner's dubious assertion that he mistakenly wandered into the wrong bedroom in his drunken state, that he had no recollection of any of the numerous times he molested his daughter or sought to do the same to her friend, or that he reacted in the manner of someone who had been found in a place he should not have been when discovered by his wife in bed with his daughter. Petitioner's complicated behavior in enlisting his daughter to approach her friend and ask if she would agree to have sexual contact with Petitioner, as well as his obviously calculated attempt to bribe the girl with driving lessons and alcohol, would have struck a reasonable juror—as it does this Court—as inconsistent with an innocent mistake in remembering the location of his bedroom.

**MEMORANDUM DECISION AND ORDER - 20**

The Court concludes that no reasonable person—genuinely unsure of whether he actually committed these terrible crimes—would have risked going to trial. Rather than multiple counts against multiple victims and three potential life sentences, along with the possibility of additional charges of physical abuse against other victims, Petitioner was allowed to plead to one count of a lesser sexual abuse charge against a single victim and faced a maximum sentence of only 15 years in prison.

This case involves extremely detrimental facts and an extremely beneficial plea agreement for Petitioner. Notwithstanding Petitioner's self-serving assertions that he would not have entered an *Alford* plea if he knew that his failure to admit guilt at the psychosexual evaluation could be interpreted as a failure to accept responsibility and as a lack of remorse (which could in turn result in a harsher sentence or a denial of parole), Petitioner has simply not established a reasonable probability that he would have gone to trial if he had known of these potential consequences. *See Hill*, 474 U.S. at 59.

## CONCLUSION

The Idaho Court of Appeals reasonably applied clearly-established Supreme Court precedent in rejecting Petitioner's claim that his *Alford* plea was invalid based on ineffective assistance of counsel. *See* 28 U.S.C. § 2254(d)(1). Alternatively, it is clear on de novo review that, even if Petitioner's counsel should have warned him that a failure to accept responsibility during a psychosexual evaluation could have resulted in a finding of a high risk to re-offend and ultimately a harsher sentence, there is no reasonable

probability that Petitioner would have taken his chances at trial, given his lack of any defense to the charges and the extremely favorable plea agreement his counsel was able to negotiate. For these reasons, Petitioner is not entitled to habeas corpus relief.

## ORDER

**IT IS ORDERED:**

1. Petitioner's Motion for Enlargement of Time To Submit a Traverse (Dkt. 13) is GRANTED. Petitioner's Traverse (Dkt. 15) is deemed timely

2. The Petition for Writ of Habeas Corpus (Dkt. 1) is DENIED, and this entire action is DISMISSED with prejudice.

3. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED:  **September 22, 2014**

Honorable Ronald E. Bush
U. S. Magistrate Judge